The document below is hereby signed.

Signed: November 19, 2018



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CORNELL STONE | ) | Case No. 17-00564 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| BMW BANK OF NORTH AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 18-10001 |
| CORNELL STONE, | ) | |
| | ) | Not for Publication in |
| Defendant. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, BMW Bank of North America, N.A. (the "Bank"), seeks, pursuant to its motion for summary judgment, an entry of a judgment against the defendant, Cornell Stone, for $90,217.31, with a declaration that the debt is nondischargeable and thus unaffected by Stone's discharge in the bankruptcy case in which this adversary proceeding is pursued. BMW asserts that the debt is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6). For the reasons stated below, the

motion for summary judgment must be denied.

I

FACTS

The Bank has established the following facts which are not in genuine dispute. On August 15, 2016, Stone entered into a Motor Vehicle Retail Installment Contract (hereinafter the "Contract") with Advantage BMW, an automobile dealership in Texas, for the purchase and financing of a 2016 Cadillac Escalade motor vehicle. The Contract required Stone to make monthly payments in the amount of $1,528.04 for a period of 72 months, beginning September 29, 2016, and continuing on the 29th day of each consecutive following month for the prescribed period. The Contract also provided, in pertinent part:

> PROMISE TO PAY . . . By signing this Contract, I choose to purchase the Vehicle on credit according to the terms of this Contract. I agree to pay you the Amount Financed, Finance Charge, and any other Charges in this Contract and other legally permitted charges. I agree to make payments according to the Payment Schedule in this Contract.

The Contract provided for Stone to become the owner of the Cadillac Escalade in exchange for his promises in the Contract. After the Contract was entered into, Advantage BMW offered the Contract to the Bank. In support of the offer, Advantage BMW submitted to The Bank a BMW Business Application (hereinafter the "Application") executed by Stone. In the Application, Stone stated he was employed by Cornell Stone Productions as its CEO

with gross annual income of $150,000.00 and with other annual income of $86,000.00 as a government contractor, for total annual income of $236,000.00, and listed mortgage debt in the amount of $1,560.00 monthly. In the Application, Stone further stated "[t]he information in this application is true and correct to the best of my knowledge." Based upon the income to debt and income to payment ratios stated by Stone in the Application and based upon Stone's promise under the Contract to make payments, the Bank purchased the Contract from Advantage BMW.[1]

The representations in the Application were false. Stone's total income in calendar year 2015 was $62,305.00. Stone's total income in calendar year 2016 was $74,000.00. Stone knew he was purchasing the vehicle for a third party, but never disclosed that fact to the Bank. Stone never insured the vehicle. Although the third party made payments for a while, payments

---

[1] Part 1 of the Contract indicated that the Contract may be transferred by Advantage BMW, as the Seller of the Cadillac Escalade. Part 11 of the Contract indicated that Advantage BMW "assigns this Contract to BMW Bank of North America . . . and acknowledges that the Dealer Agreement in place with Assignee governs this transaction," but goes on to state that "Seller shall not be an agent of Assignee for any purpose." In other words, Advantage BMW, not the Bank, became Stone's initial creditor by agreeing to let Stone obtain the Cadillac Escalade in exchange for his promises of repayment, and was not acting on behalf of the Bank, which merely became an assignee of the debt via a purchase. In any event, the Bank's evidence shows that the assignment referred to in the Contract was not to occur unless the Bank agreed to purchase the Contract upon being satisfied with the payment ratios Stone had stated in the Application.

under the Contract eventually went into default. Stone never made payments to the Bank under the Contract, no one gave him money to make payments under the Contract, and Stone never intended to make payments to the Bank pursuant to the Contract despite his promise to make payments.

Stone responds that he did not prepare the Application and the Contract, but his Affidavit filed in opposition to the motion for summary judgment does not dispute that he signed the Application and the Contract. Stone bought the vehicle pursuant to an arrangement with Brian Guyton whereby Guyton would have his business take possession of the car and would pay Stone $10,000 in exchange for the use of his credit in the acquisition of the car. As stated in Stone's opposition to the motion for summary judgment:

> Brian Guyton described to the defendant that his business, in conjunction with his business partner, Chris Mayberry, leased high-end automobiles to celebrities. Guyton explained to the defendant that his company would purchase the vehicles utilizing the defendant's credit and when [sic] then lease the vehicles to celebrities. It was explained to the defendant that the automobile payments would be made by his company from the gross receipts of the "Celebrity leases." In exchange for the use of his credit, Brian Guyton promised to pay the defendant $10,000.00.
>
> . . .
>
> On or about August 15, 2016, Brian Guyton arranged for the defendant to travel by airplane, to Houston, Texas. Brian Guyton paid for airfare and hotel accommodations. After arriving to Houston, Texas, the defendant was taken to Advantage BMW where he met Martin Mouton, the Internet Sales Advisor for the Car

4

> Dealership.
>
> Defendant Cornell Stone was immediately ushered into a room to sign and execute documents. The Motor Vehicle Retail Installment Contract application was prepared before the arrival of the defendant and without his knowledge. The defendant did not supply any of the information that was contained in the application. The defendant was told that it did not matter and he only needed to sign the contract to get his funds.

Oppos. at 1-2. Stone further notes:

> Martin Mouton of Advantage BMW was aware that Brian Guyton was taking possession of the automobiles. All car payments were to be made by Brian Guyton pursuant to the terms of the agreement. Brian Guyton made payments but eventually defaulted on the payments to BMW.

Oppos. at 2. In his Affidavit filed with the opposition, Stone states:

> 6.  When I questioned the information in the documents, I was told by Martin Mouton that everything would be fine.
>
> 7.  I was told to sign the documents in order to get the money Brian Guyton promised me.

The Bank seeks a judgment for $90,217.31, plus an award of reasonable attorneys' fees and costs. The defendant's opposition does not dispute the existence of this as a debt he owes if it is nondischargeable, and only disputes that the debt is nondischargeable.

## II

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When reviewing disputes of fact, the court looks at the facts in the light most favorable to the nonmoving party, looking at all reasonable inferences. *Id.* at 255. However, it is insufficient for the nonmoving party to show some factual dispute. *Id.* at 247. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

The moving party has the burden to show that there is no genuine dispute and the court should look at the moving party's papers critically. *Washington v. Cameron*, 411 F.2d 705, 710 (D.C. Cir. 1969). To meet this burden, the moving party "must show that the nonmoving party 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 17 (D.D.C. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"Once the moving party has made an adequate showing that a fact cannot be disputed, the burden shifts to the party opposing summary judgment to 'set forth specific facts showing that there

6

is a genuine issue for trial.'" *Ames v. Nielsen*, 286 F. Supp. 3d 70, 78 (D.D.C. 2017) (quoting *Anderson*, 477 U.S. at 250). In responding to a motion for summary judgment, a defendant may not rely on the allegations of his answer. *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). "To defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials." *Dormu*, 795 F. Supp. 2d at 17. "Instead, the non-moving party must provide affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." *Id.*

III

ANALYSIS

A.   Nondischargeability Under § 523(a)(2)(A) - Actual Fraud

Under 11 U.S.C. § 523(a)(2)(A), a debt is nondischargeable if it is a debt:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Stone's debt is a debt for property he obtained from Advantage BMW, not the Bank. The Bank must show that Stone incurred the debt, via "false pretenses, a false representation, or actual fraud," in obtaining the Cadillac Escalade from Advantage BMW. The Bank, as holder of the debt via an assignment, must satisfy the elements of common law fraud to establish its claim is

7

nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). *Field v. Mans*, 516 U.S. 59, 69 (1995). The elements of common law fraud are: "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *Nunnery v. Roundtree*, 478 F.3d 215, 218 (4th Cir. 2007). To establish nondischargeability under § 523(a)(2) when the debt was incurred incident to obtaining property in a sale, the "[p]laintiff has the burden of proving at the time of the alleged false representation that the original seller, . . . relied on Debtor's representation when extending funds." *Wells Fargo v.* Smith (*In re Smith)*, No. 07-06242, 2008 WL 7880897, at * 4 (N.D. Ga. 2008); *see also McClellen v. Cantrell*, 217 F.3d 890, 896 (7th Cir. 2000) (Ripple, J., Concurring) ("The language 'obtained by' clearly indicates that the fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed a fraudulent act to induce the creditor to part with his money or property."); *Bombadier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002) ("For purposes of Section 523(a)(2), however, the timing of the fraud and the elements to prove fraud focus on the time when the lender . . . made the extension of credit to the Debtor.").

The Bank has successfully shown that it justifiably relied on Stone's misrepresentation in purchasing the Contract; however,

8

the Bank has provided no evidence to show that Advantage BMW justifiably relied on Stone's misrepresentation. The debt was incurred in Stone's obtaining the Cadillac Escalade from Advantage BMW, and the pertinent reliance (or lack thereof) on Stone's false representations is that of Advantage BMW, not the reliance of the Bank, which was merely an assignee of the debt after Stone incurred the debt by acquiring the Cadillac Escalade from Advantage BMW. Accordingly, the Bank has not shown that it is entitled to judgment as a matter of law, and the motion for summary judgment cannot be granted.

   B.   Nondischargeability under § 523(a)(2)(B)

   The Bank's claim under § 523(a)(2)(B) fails for the same reasons as its § 523(a)(2)(A) claim. The elements of § 523(a)(2)(B) are the existence of a debt

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> . . .
>
>    (B)  use of a statement in writing—
>
>       (i)  that is materially false;
>
>       (ii) respecting the debtor's or an insider's financial condition;
>
>       (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
>       (iv) that the debtor caused to be made or published with intent to deceive[.]

Under this provision, the Bank must show that Stone incurred

9

the debt to Advantage BMW in obtaining the Cadillac Escalade via use of a materially false written statement reasonably relied on by Advantage BMW. *See Pazdzierz v. First American Title Ins. Co. (In re Pazdzierz)*, 718 F.3d 582, 590 (6th Cir. 2013); *Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088, 1091 (9th Cir. 2009); *FDIC v. v. Meyer (In re Meyer)*, 120 F.3d 66, 70 (7th Cir. 1997). As already noted above, the Bank has not even established that Advantage BMW justifiably relied on Stone's misrepresentations, a standard that is lower than reasonable reliance. *In re Dobek*, 278 B.R. at 508 ("[j]ustifiable reliance is a less demanding standard than reasonable reliance and requires only that the creditor did not 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" (quoting *Field v. Mans*, 516 U.S. 59, 71 (1995)). Accordingly, the Bank has not met its burden to show reasonable reliance, let alone any reliance at all, in Stone's obtaining credit from Advantage BMW to obtain the Cadillac Escalade and the motion for summary judgment cannot be granted.

    C.   Nondischargeability Under § 523(a)(6)

    The Bank contends that the debt is nondischargeable under 11 U.S.C. § 523(a)(6) which provides that a debtor shall not be discharged from a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

10

Willful and malicious are distinct elements that must be proven separately. *Econ. Dev. Growth Enters. Corp. v. McDermott (In re McDermott)*, 434 B.R. 271, 282 (Bankr. N.D.N.Y. 2010).

Under § 523(a)(6), "[t]he word 'willful' . . . modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). To prove willfulness, "[t]he plaintiff must show either that the defendant intended to cause the injury itself or that the defendant acted intentionally and the act in question was certain or substantially certain to result in the injury." *Pah Co. v. Eliopoulos (In re Eliopoulos)*, No. 11-02657, 2013 WL 3941380, at *3 (Bankr. S.D. Fla. July 29, 2013).

An injury is malicious "if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur)*, 737 F.3d 814, 818 (1st Cir. 2013) (quoting *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir. 1997)). An action is considered "malicious" if it is taken "in conscious disregard of one's duties without just cause or excuse." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (citations omitted). "A breach of contract is not 'willful and malicious conduct' under § 523(a)(6) unless accompanied by conduct that would give

11

rise to a tort action under state law." *Lockerby v. Sierra*, 535 F.3d 1038, 1044 (9th Cir. 2008).

"Section 523(a)(6) does not encompass 'situations in which an act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor.'" *Dobek*, 278 B.R. at 511 (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). "Thus injuries inflicted by the Debtor's negligent or reckless actions do not fall within the boundaries of 523(a)(6)." *Id.*

The Bank has not put forth evidence sufficient to show that Stone intended that Advantage BMW (in whose shoes the Bank stands as assignee) would suffer any injury. Even though Stone did not make any payments, and never intended to make payments, Stone's affidavit asserts that he believed that Guyton would make the monthly payments. Stone did not make payments of insurance for the vehicle, but there is nothing to indicate that Stone understood that insurance was not being paid by Guyton or that, if he knew that insurance was not being paid, he intended by not paying insurance to inflict injury on the Bank. Failure to pay insurance premiums would not necessarily produce harm and thus is not a basis for § 523(a)(6) nondischargeability even though there was a duty to protect the Bank by paying insurance premiums. *See In re Druen*, 121 B.R. 509, 512–13 (Bankr. W.D. Ky. 1991). This is especially so in light of the Bank's right to declare a default and repossess the vehicle if insurance was not kept in

12

place. Furthermore, the Bank asserts that Stone's fraud is sufficient to establish willful and malicious acts, but as already discussed above, the claim of fraud has not been established. Accordingly, the court cannot grant summary judgment on the Bank's claim under § 523(a)(6).

IV

For all those reasons, it is

ORDERED that the *Plaintiff's Motion for Summary Judgment* (Dkt. No. 16) is DENIED.

[Signed and dated above.]

Copies to: Recipients of e-notifications of filings.